美国 E S C
2025/05/07          701

# 公　证　书

中华人民共和国北京市方圆公证处

# Certificate of Translation

To the one concerned:

*Re: Translation from Chinese to English*

I, Xi Huayi(席华溢), translator of Beijing Qidu Translation Ltd., at 1104, 11/F, Building 5, Yard 1,Jiangmidian Street, Tongzhou District, Beijing, do hereby state that I am well versed in both English and Chinese languages and certify that the document(s) as shown in the list below, translated by me, **is**:

### Accurate and True Translation of the Original Document(s).

This is to certify the correctness of the translation only. I do not guarantee that the original document(s) is/are genuine, or that the statements contained in the original document(s) are true.

The list of the document is as follows:

| No. | File Name |
|---|---|
| 1. | **Arbitral Award**(2024) Shen Guo Zhong She Wai Cai No. 9811 |

Signed and sealed on ___April 28___ , 2025 , in the City of Beijing, China

*Translator Signature*    Xi Huayi (席华溢)

(SEAL)

Beijing Qidu Translation Co., Ltd.

**www.qidufanyi.com**
Beijing,PRC | (86) 400 100 6256 | service@qidufanyi.com

# 公　证　书

（2025）京方圆外经证字第 2288 号

申请人：北京旗渡锦程翻译有限公司，住所北京市通州区江米店街 1 号院 5 号楼 11 层 1104，法定代表人单国杰。

委托代理人：席华溢，女，1988 年 3 月 18 日出生，公民身份号码：141033198803180101。

公证事项：签名、印鉴

兹证明北京旗渡锦程翻译有限公司的委托代理人席华溢于 2025 年 4 月 28 日来到我处，在本公证员的面前，在前面的英文翻译证明书上签名并加盖北京旗渡锦程翻译有限公司之印鉴。

中华人民共和国北京市方圆公证处

公证员



2025 年 4 月 28 日

LI47596433

# NOTARIAL CERTIFICATE

(Translation)

(2025) J.F.Y.W.J.Z.Zi, No. 2288

Applicant: Beijing Qidu Translation Ltd., Address: 1104, 11/F, Building 5, Yard 1, Jiangmidian Street, Tongzhou District, Beijing, Legal Representative: Shan Guojie.

Attorney: Xi Huayi, female, born on March 18, 1988, I.D. Card No. 141033198803180101.

Item of Notarization: Signature, Seal

This is to certify that Xi Huayi, the attorney of the applicant, came to my office on April 28, 2025, affixing her signature and the seal of the applicant before me on the Certificate of Translation in English attached hereto.

Beijing Fangyuan Notary Public Office

The People's Republic of China

Notary Public: Zhu Qing

April 28, 2025

L I 47596435

# 公 证 书

（2025）京方圆外经证字第 2289 号

申请人：北京旗渡锦程翻译有限公司，住所北京市通州区江米店街 1 号院 5 号楼 11 层 1104，法定代表人单国杰。

委托代理人：席华溢，女，1988 年 3 月 18 日出生，公民身份号码：141033198803180101。

公证事项：译本与原本相符

兹证明前面的英文译本与（2025）京方圆外经证字第 2288 号公证书中文原本内容相符。

中华人民共和国北京市方圆公证处

公证员 

2025 年 4 月 28 日

LI 47596437

# NOTARIAL CERTIFICATE

(Translation)

(2025) J.F.Y.W.J.Z.Zi, No. 2289

Applicant: Beijing Qidu Translation Ltd., Address: 1104, 11/F, Building 5, Yard 1, Jiangmidian Street, Tongzhou District, Beijing, Legal Representative: Shan Guojie.

Attorney: Xi Huayi, female, born on March 18, 1988, I.D. Card No. 141033198803180101.

Item of Notarization: Conformity of Translation and Original

This is to certify that the English translation enclosed is identical with the Chinese original of the Notarial Certificate (2025) J.F.Y.W.J.Z.Zi, No. 2288.

Beijing Fangyuan Notary Public Office

The People's Republic of China

Notary Public: Zhu Qing

April 28, 2025

LI 47596439



本附加证明书仅证明公文书上的签名、签署人签名时的身份，有需对可证明公文书上的印章盖章实，附加证明书不对公文书内容予以证明。
This Apostille only certifies the authenticity of the signature, the capacity of the person who has signed the public document and, where appropriate, the identity of the seal or stamp which the public document bears. This Apostille does not certify the content of the document for which it was issued.
Visit https://consular.mfa.gov.cn/VERIFY/ and scan the QR code to verify the issuance of this Apostille.

12275169



## 附加证明书
## APOSTILLE
（1961年10月5日海牙公约）
(Convention de La Haye du 5 octobre 1961)

1. 文书出具国： 中华人民共和国
   Country: People's Republic of China

   本公文书 This public document

2. 签署人 朱青
   has been Zhu Qing
   signed by

3. 签署人身份 公证员
   acting in the Notary Public
   capacity of

4. 印鉴名称 北京市方圆公证处
   bears the Beijing Fangyuan Notary Public Office
   seal/stamp of

   证明 Certified

5. 签发地 北京          6. 签发日期 2025年05月06日
   at Beijing          the May 06,2025

7. 签发人 李勇，参赞／ Li Yong. Counsellor
   by 外交部领事司
      Department of Consular Affairs of the Ministry of Foreign Affairs

8. 附加证明书编号 认字第250000174391号
   No

9. 签发机关印鉴： 10. 签名：
   Seal/Stamp: Signature:



Beijing Fangyuan Notary Public Office

The People's Republic of China

Notary Public

April 28, 2025



# Arbitral Award

# Shenzhen Court of International Arbitration

| | |
|---|---|
| **Claimant:** | Shenzhen Goldely Garments Import and Export Inc. |
| **Unified Social Credit Code:** | 91440300767580442H |
| **Legal Representative:** | Ren Jianping |
| **Domicile:** | 15H, Huajing Huayuan, No.5018 Binhe Avenue, Fushan Community, Futian Sub-district, Futian District, Shenzhen, Guangdong Province, PRC |
| **Attorneys:** | Xiaobin LIU, Attorney-at-law, Beijing Yingke Law Firm Shenzhen Office Heng LI, Attorney-at-law, Beijing Yingke Law Firm Shenzhen Office |

| | |
|---|---|
| **Respondent 1:** | POINT COLLECTION LLC |
| **CERTIFICATE OF FORMATION:** | 0450488267 |
| **Member/Manager:** | Avrohom Flohr (commonly known as "Abe Flohr") |
| **Domicile:** | 7 SHERWOOD DRIVE LAKEWOOD, NEW JERSEY 08701 |
| **Attorneys:** | Xueying LIANG, Attorney-at-law, Guangdong Huayao Law Firm Yuwen LIN, Attorney-at-law, Guangdong Huayao Law Firm |



| | |
|---|---|
| Respondent 2: | THE GALLERY COLLECTION LLC |
| CERTIFICATE OF FORMATION: | 0450116890 |
| Member/Manager: | Avrohom Flohr (commonly known as "Abe Flohr") |
| Domicile: | 95 E. KENNEDY BLVD LAKEWOOD, NEW JERSEY 08701 |
| Attorneys: | Xueying LIANG, Attorney-at-law, Guangdong Huayao Law Firm<br>Yuwen LIN, Attorney-at-law, Guangdong Huayao Law Firm |

Shenzhen

March 31, 2025



# Arbitral Award

(2024) Shen Guo Zhong She Wai Cai No. 9811

The Shenzhen Court of International Arbitration (also known as the South China International Economic and Trade Arbitration Commission, the Guangdong-Hong Kong-Macao Greater Bay Area International Arbitration Center, and the Shenzhen Arbitration Commission, and formerly known as the CIETAC Shenzhen Sub-Commission; hereinafter referred to as the "**Commission**") accepted the case (Case No.: (2024) Shen Guo Zhong She Wai Shou No. 9811, hereinafter referred to as the "**Case**") pursuant to the arbitration clause contained in the Settlement Agreement No.135TD0029 (hereinafter referred to as the "**Settlement Agreement**"), dated May 4, 2024 by and between the Claimant and Respondents 1 and 2 (hereinafter referred to collectively as the "**Respondents**"), and the Request for Arbitration filed by the Claimant on August 15, 2024.

The arbitration proceedings in the Case shall be governed by the *Arbitration Rules of the Shenzhen Court of International Arbitration (Revised in 2022)* (the "**Arbitration Rules**"), which came into effect on February 21, 2019. Pursuant to Article 56 of the Arbitration Rules, the expedited procedure shall apply to the Case.

On September 11, 2024, the Commission served the Respondents with a copy of the Notice of Arbitration, the Arbitration Rules, the Arbitrator Roster of the Shenzhen Court of International Arbitration, the Letter of Arbitrator Appointment, the Claimant's Request for Arbitration and accompanying evidentiary materials. Meanwhile, the relevant documents also served to the Claimant.

In the Notice of Arbitration, the Commission informed the parties of their right to appoint arbitrators and of the requirements to which they are bound. As the parties failed to jointly appoint, or cause the appointment of, a sole arbitrator within the prescribed timeframe, the Commission appointed Mr. Jianzhao WANG as the sole arbitrator for the Case pursuant to Articles 31 and 30 (2) of the Arbitration Rules. On December 3, 2024, Mr. Wang constituted the arbitral tribunal (the "**Tribunal**") to hear the Case.

On December 26, 2024, the Tribunal convened to hear the Case, with the Claimant's legal representative and attorneys, as well as the Respondents' attorneys, in attendance. At the hearing, the Claimant and the Respondents each presented their arbitration claims and defenses, respectively. They cross-examined the evidence submitted by the opposing party, responded to investigative questions posed by the Tribunal, and made their final statements. The parties expressed their views, agreed to conduct a written cross-examination of the post-hearing materials, and raised no objections to the Court's jurisdiction, the composition of the Tribunal, or any of the arbitration proceedings already conducted.

In accordance with the provisions of the Arbitration Rules, the deadline for rendering an award in the Case was extended to March 31, 2025.

All arbitration documents related to the Case, including but not limited to the Notice of Arbitration and the Notice of Composition and Opening of the Tribunal issued by the Court, as well as the arbitration documents and evidentiary materials forwarded by the Court to each party, have been duly served pursuant to Article 6 of the Arbitration Rules.

The proceedings in the Case have been concluded, and the Tribunal has rendered its award based on

1





the findings from the hearing and all written submissions. The relevant facts of the Case, together with the Tribunal's opinions and award, are hereby set out below:

# I. Case Facts

## (I)    The Claimant's Arbitration Claims, Facts and Reasoning

The Claimant asserted the following:

The Claimant is one of the suppliers of the Respondents, providing garments and other products. From November 2023 to January 2024, the Respondents placed five (5) purchase orders with the Claimant (specifically PO#295-A23122, PO#302-A23123, PO#308-A23125, PO#324-A2402 and PO#325-A2403), with the agreed payment terms being "25% paid in advance, and 75% paid upon delivery". However, the Respondents have failed to pay for the goods delivered by the Claimant.

On May 4, 2024, during the China Import and Export Fair (also known as the Canton Fair), which was attended by the parties, a settlement was reached regarding the Respondents' failure to make timely payments to the Claimant. This settlement was mediated by the Canton Fair Complaint Station for IPR and Trade Dispute (the "**Complaint Station**") and resulted in the execution of the Settlement Agreement.

Pursuant to the Settlement Agreement, the Respondents "agreed to pay the Claimant, i.e., Party A, the sum of USD 220,186 by May 31, 2024, in settlement of all disputes arising from five (5) purchase orders (specifically PO#295-A23122, PO#302-A23123, PO#308-A23125, PO#324-A2402 and PO#325-A2403). The Settlement Agreement also serves as the "final resolution of the relevant disputes" arising from the said purchase orders.

Furthermore, the Settlement Agreement stipulates as follows: for this Settlement Agreement to become enforceable, the parties agree that, either party shall have the right to apply to the arbitration court for an expedited arbitral award, in accordance with the provisions of its Arbitration Rules and this Settlement Agreement.

Despite repeated demands from the Claimant, the Respondents have failed to perform their obligations under the Settlement Agreement upon execution thereof. As of the date of this arbitral award, the Respondents remain in default.

To sum up, the Respondents' conduct constitutes a serious breach of contract. Accordingly, the Claimant hereby requests the Court to render an award in accordance with the law to protect its legitimate rights and interests.

Based on the foregoing, the Claimant has made the following arbitration claims:

1. That the Respondents be ordered to jointly pay the Claimant a principal sum of USD 220,186 (equivalent to RMB 1,590,271.37), plus interest calculated at 1.5 times the Loan Prime Rate (LPR), commencing on June 1, 2024 and continuing until the date of full and final payment. As of August 1, 2024, the accrued interest is preliminarily calculated at RMB 14,401.89.

2. That the Respondents be ordered to jointly compensate the Claimant RMB 80,000 in attorneys' fees.

3. That the Respondents be ordered to bear the arbitration costs incurred in connection with the Case.



The Claimant clarified at the hearing that the applicable interest rate mentioned in Claim 1 above shall be calculated at the rate 1.5 times the LPR applicable as of June 1, 2024.

## (II) The Respondents' Principal Defenses

The Respondents presented their oral defenses at the hearing, which are summarized as follows:

1. The signatory to the Settlement Agreement, Mr. Fernando, served as the Production Manager of the Respondents' Procurement Department, and was primarily responsible for matters relating to garment procurement and production. During the Canton Fair, his role was limited to sourcing potential suppliers, and he neither assumed responsibility for nor was authorized to address payment-related matters.

2. With respect to the payment for the five (5) purchase orders (i.e., PO#295-A23122, PO#302-A23123, PO#308-A23125, PO#324-A2402 and PO#325-A2403) as mentioned in the Settlement Agreement, the basis for calculating the amount payable to the Claimant as verified by the Respondents comprises: (i) USD 159,843, as stated in the Letter of Undertaking (Evidence 6); (ii) USD 47,653.25, as reflected in the invoice on pages 27 to 28 of the English version of Evidence; and (iii) USD 12,690, as shown in the invoice on page 30 of the same Evidence in English. However, the Respondents argued that the amount of USD 12,690 shown in the invoice on page 30 corresponds to purchase order PO#333-A2409, which is not included in the Settlement Agreement. Accordingly, this amount should not form part of the Claimant's arbitration claim.

3. In the absence of an agreement between the parties regarding the assumption of attorneys' fees and arbitration costs, the Claimant should bear its own legal expenses.

# II. Determinations of the Tribunal

The Tribunal holds that, throughout the course of the arbitral proceedings, each party is obligated to submit authentic and sufficient evidence, make truthful statements, and participate in the arbitral proceedings in good faith. Either party failing to do so shall bear the corresponding legal consequences. Based on the existing evidence and the Tribunal's findings, the Tribunal has ascertained the relevant facts of the Case, and now proceeds to present its analysis and determinations as follows. The Tribunal has fully considered the arguments presented by the parties during the proceedings, and has carefully examined the evidence submitted. The Tribunal will refrain from addressing or analyzing any claims or evidence herein that it deems immaterial to the outcome of the arbitration.

## (I) Facts Ascertained and Determined by the Tribunal

1. From November 2023 to January 2024, the Respondents placed five (5) purchase orders with the Claimant (specifically PO#295-A23122, PO#302-A23123, PO#308-A23125, PO#324-A2402 and PO#325-A2403, collectively the "**Five Purchase Orders**"), with a total value of USD 207,496. The Respondents acknowledge that the payment for the goods delivered under the Five Purchase Orders has not been made.



2. On May 4, 2024, during the China Import and Export Fair (also known as the Canton Fair), which was attended by the parties, the Claimant (Party A) and the Respondents (Party B) reached a settlement concerning the payment disputes arising from the Five Purchase Orders. The settlement was mediated by the Complaint Station, and Mr. Fernando Hector Machado, an employee of the Respondents, entered into the Settlement Agreement with the Claimant on behalf of the Respondents. The following is a summary of the key clauses of the Settlement Agreement relevant to the Case:

......

1. Party B agrees to pay Party A a total amount of USD 220,186 by May 31, 2024 (both the Claimant and the Respondents acknowledge that this amount includes the value of the Five Purchase Orders (USD 207,496) as well as the amount of the purchase order PO#333-A2409 (USD 12,690), under which the Respondents have acknowledged receipt of the goods without making any payment -- Note by the Tribunal).

......

4. Upon Party B's fulfillment of its payment obligations as agreed, Party A agrees to provide Party B with a certificate of payment receipt within ten (10) days of receipt of the full amount due.

5. This Agreement shall serve as the final resolution of all disputes arising from the purchase orders (i.e., PO#295-A23122, PO#302-A23123, PO#308-A23125, PO#324-A2402 and PO#325-A2403). Following Party B's fulfillment of its obligations under Articles 1 and 2, Either party shall not hold the other party liable for the aforementioned purchase orders.......

7. For this Settlement Agreement to become enforceable, the parties agree that, either party shall have the right to apply to the Shenzhen Court of International Arbitration for an expedited arbitral award, in accordance with the provisions of its Arbitration Rules and this Settlement Agreement.

......

3. The Respondents appointed Guangdong Huayao Law Firm to issue the Letter of Attorney (2024) Hua Yao Lv Han Zi No.0531-235, dated May 31, 2024. A summary of the contents of the Letter of Attorney is set out below:

......

1. Point Collection has become aware, through digital communications with its U.S. peers (e.g., information communicated through real-time telecommunication tools and foreign social media), that you disclosed details of the purchase orders between the parties (including but not limited to relevant colors and product types) without Point Collection's permission. This disclosure appears to have been made for the purpose of leveraging your business relationship with Point Collection to pursue additional partnerships with third parties. Such conduct constitutes a breach of Article 1 (Duty of Confidentiality) of the Non-Disclosure Agreement. Point Collection shall have the right to demand liquidated damages in the amount of RMB 500,000 from you pursuant to Article 4.1 of the Non-Disclosure Agreement, and further reserves the right to suspend payment under the relevant purchase orders and disqualify you as a supplier. Should Point Collection identify any losses resulting from your unauthorized disclosure of trade secrets, Point Collection further reserves the right to pursue separate claims for damages against you.

2. Regarding the execution of the Settlement Agreement No.135TD0029, Mr. Fernando Hector Machado, an employee of the Procurement Department, was primarily responsible for negotiating matters related to garment procurement and payment with you. He has never been authorized by



Point Collection to execute any instrument that creates rights or obligations on Point Collection's behalf. Moreover, Mr. Fernando Hector Machado explicitly informed you that he was acting solely as an employee of the company and lacked authority to sign the Settlement Agreement. Not only did you fail to verify whether Mr. Fernando Hector Machado had the authority to sign on behalf of Point Collection, but you also coerced him into signing the Settlement Agreement by threatening exclusion from the Canton Fair and blacklisting. In accordance with the *Civil Code of the People's Republic of China*, the Settlement Agreement was executed by the employee under duress and did not reflect the true intention of Point Collection. Accordingly, Point Collection denies the validity of the execution of the Settlement Agreement No.135TD0029. The payment of USD 220,186 due to you by May 31, 2024, under the Settlement Agreement, should be suspended until you and Point Collection reach a separate agreement on the amount and timing of the payment through further negotiations.

......

4. The Respondents submitted a Letter of Complaint Regarding the Resolution of the Disputes Arising from the Settlement Agreement No.135TD0029 to the China Import and Export Fair, naming the Complaint Station as the subject of the complaint. In the letter, the Respondents alleged the following: (1) the Complaint Station coerced their employee into signing the Settlement Agreement with the counterparty without conducting proper due diligence in dealing with the dispute, in a manner inconsistent with the fundamental business rules of the Canton Fair and in violation of the principles of fairness and impartiality; (2) the Settlement Agreement No.135TD0029 should be revoked; and (3) the Complaint Station should clarify whether the Respondents (as the complainant) have been denied access to the Canton Fair.

5. On July 26, 2024, the Claimant entered into a Civil Legal Services Agreement with Beijing Yingke Law Firm Shenzhen Office, appointing Yingke attorneys to provide legal services for the Case and agreeing to pay attorneys' fees in the amount of RMB 80,000.

6. The Claimant has also advanced arbitration costs in the amount of RMB 52,117.

### (II)    Determination on the Application of Laws to the Case

As the Respondents are incorporated in the United States, they are considered foreign entities. Therefore, the Case constitutes a foreign-related civil matter. Article 3 of the *Law of the People's Republic of China on Application of Law in Foreign-Related Civil Relations* provides that, "The parties may expressly select the law applicable to a foreign-related civil relation in accordance with the provisions of the law." Although the parties did not specify the governing law in the Settlement Agreement No.135TD0029, the Claimant stated during the hearing that the Case should primarily be governed by the United Nations Convention (if applicable), or alternatively by the laws of Mainland China if there is no applicable United Nations Convention, and the Respondents also confirmed at the hearing that the Case should be governed by the laws of Mainland China. Article 41 of the *Law of the People's Republic of China on Application of Law in Foreign-Related Civil Relations* provides that, "The parties may select by agreement the law applicable to a contract. Where the parties do not so select, the law of the habitual residence of the party whose performance of the contractual obligations can best embody the characteristics of the contract, or other law most closely associated with the contract shall apply." The Tribunal determines that the laws of Mainland China shall govern the resolution of the disputes concerning the Case, in accordance with the principle of the most closely association and taking into account the opinions of both the Claimant and the Respondents.



**(III) Determination on Key Issues of this Dispute**

Based on the facts of the Case and in accordance with the provisions of applicable laws and regulations, the Tribunal, after a comprehensive review of the Claimant's arbitration claims and the Respondents' defenses, analyzes and determines the following key issues:

1. Validity of the Settlement Agreement

The Respondents contended that, Mr. Fernando Hector Machado, who was solely responsible for sourcing potential suppliers during the Canton Fair, neither assumed responsibility for nor was authorized to address payment-related issues. The Respondents further asserted that the Settlement Agreement executed by him was signed under duress and is therefore revocable. The Claimant asserted the following: (1) the Settlement Agreement was entered into by the parties through amicable negotiations facilitated by a third party, and there is no evidence to support Repondents' claim of coercion; (2) based on the historical course of dealing between the parties, Mr. Fernando, acting as a signatory on behalf of the Respondents, had full authority to execute the Settlement Agreement; and (3) even assuming that Mr. Fernando exceeded his authority in executing the Settlement Agreement, the Claimant, in light of the parties' historical course of dealing and the management of their longstanding business relationship, had reasonable grounds to believe that Mr, Fernando was duly authorized to do so.

Issue regarding the authority to execute the Settlement Agreement. The Tribunal finds that, Mr. Fernando Hector Machado was the individual who placed the Five Purchase Orders with the Claimant and actively participated in the relevant payment processes. According to the Letter of Attorney (2024) Hua Yao Lv Han Zi No.0531-235, Mr. Fernando Hector Machado was identified as an employee of the Respondents' Procurement Department, primarily responsible for negotiating matters related to garment procurement and payment with the Claimant. Given the above, it is evident that Mr. Fernando Hector Machado was the representative entrusted by the Respondents with the relevant work responsibilities. In view of the historical course of dealing between the parties, the Claimant had ample grounds to believe that he was duly authorized to execute the Settlement Agreement. In accordance with Article 170 of the *Civil Code of the People's Republic of China* (the "**Civil Code**"), the Tribunal holds that the Settlement Agreement executed by Mr. Fernando Hector Machado is legally binding upon the Respondents. Accordingly, the Respondents' defenses challenging his authority to execute the Settlement Agreement are without factual or legal merit, and are hereby dismissed.

Issue regarding whether the Settlement Agreement reflects the true intention of the Respondents. The Tribunal finds that, the Settlement Agreement was executed through mediation by the Complaint Station, as evidenced by the mediator's signature and the official seal of the Complaint Station. The Respondents have failed to provide any evidence demonstrating that the Settlement Agreement was executed under duress, nor did they exercise their right of revocation in accordance with the legal procedures. Accordingly, the Respondents' defenses alleging duress in the execution of the Settlement Agreement are without factual or legal merit and are hereby dismissed.

In conclusion, the Tribunal determines the Settlement Agreement reflects the true intention of both the Claimant and the Respondents, does not contravene any mandatory provisions of applicable laws and administrative regulations, and thus is valid and legally binding upon the parties.

2. Whether the payment dispute concerning the purchase order PO#333-A2409 falls within the scope



of adjudication of the Case

The Respondents contended that the Settlement Agreement solely addressed payment issues arising under the Five Purchase Orders, and therefore, the amount claimed in arbitration by the Claimant should be reduced by the sum of USD 12,690, representing the value of the purchase order PO#333-A2409. Following the hearing, the Tribunal issued a List of Questions to both the Claimant and the Respondents, seeking clarification on whether the dispute arising from the performance of the purchase order PO#333-A2409 falls within the scope of the present arbitration. However, the parties failed to reach a consensus on this matter. The Claimant maintained that the Tribunal's adjudication of the dispute concerning the purchase order PO#333-A2409 does not go beyond the scope of the Arbitration Agreement.

The Tribunal finds as follows: (1) Article 5 of the Settlement Agreement clearly stipulates: "This Agreement serves as the final resolution of the disputes arising from the purchase orders PO#295-A23122, PO#302-A23123, PO#308-A23125, PO#324-A2402 and PO#325-A2403"; and (2) the Settlement Agreement was intended to prescribe the timing of the payment for the Five Purchase Orders and to settle the disputes arising therefrom. In light of the foregoing, it is evident that the Settlement Agreement does not constitute an independent contract, but rather operates as a supplemental agreement entered into in connection with the Five Purchase Orders. It does not function as a supplemental agreement to the purchase order PO#333-A2409. Therefore, the dispute arising from the performance of the purchase order PO#333-A2409 does not fall within the scope of the arbitration clause contained in the Settlement Agreement. The Claimant and the Respondents failed to reach a consensus on the Tribunal's adjudication of the dispute arising from the purchase order PO#333-A2409. Accordingly, the Tribunal finds that the dispute over the payment for the purchase order PO#333-A2409 falls outside the scope of the present arbitration. The Tribunal further holds that the amount payable by the Respondents under the Settlement Agreement, which includes the amount associated with the purchase order PO#333-A2409, was improperly calculated and shall be reduced accordingly.

3. Whether the Claimant's alleged breach of the Non-Disclosure Agreement constitutes a valid defense for the Respondents' non-payment under the Five Purchase Orders

The Respondents contended that the Claimant breached its duty of confidentiality under the Non-Disclosure Agreement, thereby incurring liability for liquidated damages, which damages should be offset against the payment for the Five Purchase Orders. The Claimant claimed that, the Non-Disclosure Agreement was unrelated to the Case, and that any dispute arising thereunder should be resolved through separate legal proceedings, which the Respondents should pursue independently through appropriate legal channels.

The Tribunal finds that: (1) the Non-Disclosure Agreement lacks an arbitration clause. Consequently, the disputes arising thereunder fall outside the scope of the arbitration; (2) the Case constitutes a dispute arising from a sales contract, which is governed by Article 595 of the Civil Code, providing that "A sales contract is a contract whereby the seller transfers the ownership of a subject matter to the buyer, and the buyer pays the price." In the Case, the Claimant has performed its delivery obligations, thereby giving rise to the Respondents' obligation to make the payment. The Claimant's alleged liability for breach of the Non-Disclosure Agreement does not constitute a valid defense for the Respondents' non-payment. In summary, the Respondents' refusal to fulfill their payment obligations shall not be upheld.



**(IV) Determination on the Claimant's Arbitration Claims**

1. The Respondents shall jointly pay the Claimant a principal sum of USD 220,186, plus interest calculated at 1.5 times the LPR, commencing on June 1, 2024 and continuing until the date of full and final payment

As the dispute over the payment for the purchase order PO#333-A2409 falls outside the scope of adjudication of the Case, the amount of USD 12,690, representing the value of the purchase order PO#333-A2409, shall be deducted from the total sum claimed. Accordingly, the amount payable by the Respondents should be USD 207,496. The Tribunal hereby orders the Respondents to pay the Claimant the sum of USD 207,496.

With respect to the issue of interest, the Tribunal holds that, as clearly stipulated in the Settlement Agreement, the Respondents shall pay for the Five Purchase Orders by May 31, 2024, and any delay in payment shall constitute a breach of contract, thereby obligating the Respondents to compensate the Claimant for the improper retention of funds. Although the Settlement Agreement does not specify any liability for delayed payment, in accordance with Article 18 of the *Interpretation of the Supreme People's Court Concerning the Application of Laws in the Trial of Cases of Sales Contract Disputes (Revised in 2020)*, the Claimant calculated the liquidated damages for delayed payment based on the one-year LPR published by the National Interbank Funding Center, as authorized by the People's Bank of China on the date of breach ( June 1, 2024), plus an additional 50%. The Tribunal ascertains that the one-year LPR applicable on June 1, 2024 was 3.45%, resulting in an effective interest rate of 5.175% after applying a 50% increase; according to the *Q2 2024 Execution Report of China Monetary Policy* published by the People's Bank of China, the average interest rate for one-year USD-denominated loans in June 2024 was 5.25%. Accordingly, the Tribunal finds that the Claimant's method of calculating interests to be appropriate and therefore upholds it. The Tribunal hereby orders the Respondents to pay the Claimant interest on the principal sum of USD 207,496 at an annual interest rate of 5.175%, commencing on June 1, 2024 and continuing until the date of full and final payment.

2. Whether the Respondents should jointly compensate the Claimant RMB 80,000 in attorneys' fees

The Tribunal finds that: (i) the Case arises from the breach of contract by the Respondents; and (ii) the attorneys' fees incurred by the Claimant constitute necessary expenses for the enforcement of its creditors' rights, and the Respondents shall make compensation therefor. In accordance with Article 64 of the Arbitration Rules and based on the particulars of the Case, the Tribunal exercises its discretion and determines that the Respondents shall compensate the Claimant for attorneys' fees in the amount of RMB 50,000.

3. Whether the Respondents should bear the arbitration costs incurred in connection with the Case

The Tribunal holds that the Case arises from the breach of contract by the Respondents and, in accordance with Article 64 of the Arbitration Rules and based on the particulars of the Case, determines that all arbitration costs incurred in connection with the Case shall be borne by the Respondents.

## III. Arbitral Award



In conclusion, the Tribunal renders this award as follows with respect to the Case:

(I) Respondent 1 and Respondent 2 shall jointly pay the Claimant the amount of USD 207,496, plus interest (calculated based on the principal amount of USD 207,496 at an annual interest rate of 5.175%, commencing on June 1, 2024 and continuing until the date of full and final payment).

(II) Respondent 1 and Respondent 2 shall jointly compensate the Claimant for attorneys' fees in the amount of RMB 50,000.

(III) Respondent 1 and Respondent 2 shall bear the arbitration costs incurred in connection with the Case, totaling RMB 52,117. The Claimant has advanced RMB 52,117 as arbitration costs, which are non-refundable. Accordingly, Respondent 1 and Respondent 2 shall pay RMB 52,117 directly to the Claimant.

Respondent 1 and Respondent 2 shall make all payments specified above within ten (10) days following the date of this award.

This award shall be final and legally binding as of the date it is rendered.



Sole Arbitrator:

March 31, 2025

(Shenzhen Court of International Arbitration)

Secretary of the Tribunal: Zongyi LI

Scan the QR code to verify the authenticity of digital instruments issued by the Shenzhen Court of International Arbitration
Please register and log in at online.scia.com.cn
Enter the code 087Z2WH to access and submit all case-related materials

# 深 圳 国 际 仲 裁 院

## 裁　决　书

申　请　人：深圳市金地利服装进出口有限公司

统一社会信用代码：91440300767580442H

法定代表人：任建平

住　　　所：中国广东省深圳市福田区福田街道福山社区滨
　　　　　　河大道 5018 号华景花园 15H

代　理　人：刘孝斌 北京市盈科（深圳）律师事务所律师
　　　　　　李　恒 北京市盈科（深圳）律师事务所律师

第一被申请人：POINT COLLECTION LLC

CERTIFICATE OF FORMATION：0450488267

Member/Manager：Avrohom Flohr（简写：Abe Flohr）

住　　　所：7 SHERWOOD DRIVE LAKEWOOD, NEW
　　　　　　JERSEY 08701

代　理　人：梁雪盈 广东桦曜律师事务所律师
　　　　　　林育温 广东桦曜律师事务所律师



第二被申请人：THE GALLERY COLLECTION LLC

CERTIFICATE OF FORMATION：0450116890

Member/Manager：Avrohom Flohr（简写：Abe Flohr）

住　　　所：95 E. KENNEDY BLVD LAKEWOOD, NEW JERSEY 08701

代　理　人：梁雪盈 广东桦曜律师事务所律师
　　　　　　林育温 广东桦曜律师事务所律师

深　　圳

二〇二五年三月三十一日



# 裁　决　书

（2024）深国仲涉外裁 9811 号

深圳国际仲裁院（又名华南国际经济贸易仲裁委员会、粤港澳大湾区国际仲裁中心、深圳仲裁委员会，曾用名中国国际经济贸易仲裁委员会华南分会、中国国际经济贸易仲裁委员会深圳分会，下称"仲裁院"）根据申请人与第一被申请人、第二被申请人（以下合称"被申请人"或"两被申请人"）于 2024 年 5 月 4 日签订的《第 135TD0029 号和解协议书》（下称《和解协议》）中的仲裁条款以及申请人于 2024 年 8 月 15 日向仲裁院提交的仲裁申请，受理了本案。本案受案号为（2024）深国仲涉外受 9811 号。

本案仲裁程序适用自 2019 年 2 月 21 日起施行的《深圳国际仲裁院仲裁规则（2022 年修正）》（下称《仲裁规则》）。根据《仲裁规则》第五十六条之规定，本案适用快速程序。

2024 年 9 月 11 日，仲裁院向被申请人发出《仲裁通知》《仲裁规则》《深圳国际仲裁院仲裁员名册》《关于指定仲裁员的函》以及申请人提交的仲裁申请书及所附证据材料。相关文件也一并向申请人发送。

仲裁院已在《仲裁通知》中向当事人明确说明其指定仲裁员的权利及相关要求。因双方当事人在规定的期限内未共同指定或者共同委托指定独任仲裁员，根据《仲裁规则》第三十一条、第三十条第（二）款，仲裁院指定王剑钊作为本

1



案独任仲裁员，该仲裁员于 2024 年 12 月 3 日组成仲裁庭审理本案。

2024 年 12 月 26 日，仲裁庭对本案进行了开庭审理。申请人法定代表人及代理人，被申请人代理人出席了庭审。庭审中，申请人与被申请人分别陈述了仲裁请求及答辩意见，对对方出示的证据进行了质证，回答了仲裁庭的调查提问，并作了最后陈述。双方当事人发表了意见，同意对庭后材料进行书面质证，并表示对仲裁院管辖权、仲裁庭组成及已进行的全部仲裁程序没有异议。

根据《仲裁规则》的相关规定，本案裁决作出之期限延至 2025 年 3 月 31 日。

本案所有仲裁文书，包括但不限于仲裁院发出的《仲裁通知》《仲裁庭组成及开庭通知》以及转递的当事人提交的仲裁文书及证明材料，均已依照《仲裁规则》第六条之规定送达。

本案已审理终结，仲裁庭根据庭审情况以及现有书面材料，依法作出本裁决。现将本案案情、仲裁庭意见以及裁决内容分述如下。

# 一、 案 情

## （一）申请人的仲裁请求、事实及理由

申请人称：

申请人是被申请人的供货商，向被申请人供应服装等产

2



品。2023 年 11 月至 2024 年 1 月期间，被申请人先后向申请人下达 5 个订单（采购单号 PO#295-A23122, PO#302-A23123, PO#308-A23125, PO#324-A2402, PO#325-A2403），约定付款方式为"预付 25%，余款在交货后即付清"。申请人交货后，被申请人却迟迟未支付相应货款。

2024 年 5 月 4 日，双方在参加中国进出口商品交易会（广交会），期间，经广交会投诉站的调解，就被申请人拖欠申请人货款事宜达成和解，并签署和解协议。

根据和解协议约定，针对双方因采购单号 PO#295-A23122, PO#302-A23123, PO#308-A23125, PO#324-A2402, PO#325-A2403 所引起的争议，被申请人"同意于 2024 年 5 月 31 日之前，向甲方（申请人）支付货款美元$220,186"。同时，该和解协议作为涉案采购单"有关争议的最终解决方案"。

另外，和解协议约定：为使本和解协议的内容具有可强制执行的法律效力，双方同意，任何一方当事人有权向仲裁院申请，按照其《仲裁规则》的规定，根据和解协议的内容快速作出仲裁裁决。

签署和解协议之后，经申请人反复催促，被申请人一直推诿不予履行。截至目前，被申请人仍未向申请人支付上述款项。

综上所述，被申请人的行为已经构成严重违约，为维护申请人合法权益，特向仲裁院申请仲裁，恳请仲裁院依法裁决。



据此，申请人提出如下仲裁请求：

1. 两被申请人共同向申请人支付货款 220,186 美元（折合人民币 1,590,271.37 元），并从 2024 年 6 月 1 日起按同期 LPR 的 1.5 倍支付利息至付清之日止，暂计算至 2024 年 8 月 1 日为人民币 14,401.89 元。

2. 两被申请人共同赔偿申请人支付的律师费损失人民币 80,000 元。

3. 被申请人承担本案仲裁费用。

申请人当庭明确第 1 项仲裁请求利息计算标准为 2024 年 6 月 1 日适用 LPR 的 1.5 倍。

**（二）被申请人的主要答辩意见**

被申请人当庭口头答辩意见的主要内容为：

1. 案涉的和解协议签署人 Mr.Fernando 是被申请人采购部生产经理，主要负责服装采购及生产，广交会期间 Mr.Fernando 仅负责寻找供应商合作，不负责也无权处理货款支付问题。

2. 关于货款问题，和解协议中针对的是采购单号 PO#295-A23122、 PO#302-A23123、 PO#308-A23125、 PO#324-A2402、PO#325-A2403 的货款，根据被申请人核实申请人货款计算依据是申请人提交的证据 6 承诺函中的 159,843 美元加上英文版证据第 27—28 页的发票中的 47,653.25 美元加上第 30 页发票中的 12,690 美元，实际上第 30 页发票中 12,690 美元所属的采购单号为 PO#333-A2409，



并不包含在争议和解协议中，故 12,690 美元不应计算在仲裁请求的货款之内。

3. 双方之间没有约定律师费、仲裁费承担的问题。申请人维权费用应该自行承担。

# 二、仲裁庭意见

仲裁庭认为，在仲裁程序中，各方均应提交并如实、充分提交证据，如实进行陈述，诚信参与仲裁程序，否则应当承担相应的法律后果。依据现有证据以及仲裁庭的庭审调查，仲裁庭查明本案有关事实，并作出以下分析和认定。仲裁庭充分考虑了各方在程序过程中提出的意见、审查了各方提交的证据，对于仲裁庭经过审理认为不影响仲裁结论的主张或证据，仲裁庭在下文中将不加以详述或分析。

## （一）仲裁庭查明及认定的事实

1. 2023 年 11 月至 2024 年 1 月期间，被申请人先后向申请人下达编号分别为 PO#295-A23122，PO#302-A23123，PO#308-A23125，PO#324-A2402，PO#325-A2403 等五份采购单（下合称"案涉五份采购单"），项下货款合计 207,496 美元。被申请人确认，申请人按采购单约定交货后，相应货款尚未支付。

2. 2024 年 5 月 4 日，双方在参加中国进出口商品交易会（广交会）期间，经广交会投诉站的调解，申请人（甲方）

5



和被申请人（乙方）就案涉五份采购单项下货款争议达成和解，被申请人员工 Mr. Fernando Hector Machado 代表被申请人签署《和解协议》，与本案相关的主要条款摘录如下：

......

1.乙方同意于 2024 年 5 月 31 日之前，向甲方支付货款美元$220,186（申请人和被申请人均确认该金额除案涉五份采购单项下 207,496 美元货款外，还包含 PO#333-A2409 号采购单项下货款 12,690 美元，被申请人确认已收到 PO#333-A2409 号采购单项下货物，货款尚未支付——仲裁庭注）。

......

4.在乙方依约履行付款之后，甲方同意在收到全部款项之日起十天内向乙方发出收款证明。

5. 本协议作为采购单号 PO#295-A23122.PO#302-A23123.PO#308-A23125.PO#324-A2402.PO#325-A2403 有关争议的最终解决方案，在乙方履行上述第 1 条及第 2 条之后，任何一方不得再就前述这些采购单向对方追究责任。

......

7.为使本和解协议的内容具有可强制执行的法律效力，双方同意，任何一方当事人有权向深圳国际仲裁院申请，按照其《仲裁规则》的规定，根据和解协议的内容快速作出仲裁裁决。

......



3. 被申请人委托广东桦曜律师事务所向申请人发出（2024）桦曜律函字第 0531-235 号《律师函》（签署日期为 2024 年 5 月 31 日），主要内容摘录如下：

......

1、关于泄露商业秘密，Point Collection 收到美国同行的电子信息（如通过即时通讯工具及在国外社交媒体上的沟通信息）告知，贵司在未经 Point Collection 许可下将双方合作的采购订单细节（包括但不限于相关色号、型号等）告知第三方，企图利用透露与 Point Collection 的合作关系扩大与第三方的合作市场，贵司行为已触犯保密协议第一条保密义务的约定，构成违约。Point Collection 有权依据该协议 4.1 的规定要求贵司支付 50 万元作为违约金，并保留对相关订单的货款暂停支付、取消贵司的供应商资格的权利。如后续 Point Collection 发现贵司泄露商业秘密行为导致损失，Point Collection 将另行要求贵司赔偿损失。

2、关于《第 135TD0029 号和解协议书》的签订，Mr.Fernando Hector Machado 作为采购部员工，其职责主要为与贵司商谈采购服装及付款事宜，Point Collection 并未授权 Mr.Fernando Hector Machado 可代为签署相关权利义务等文书，且 Mr.Fernando Hector Machado 已多次明确向贵司表示其仅为公司员工，无权签署协议。贵司不但未审查 Mr.Fernando Hector Machado 是否有权代公司签字，还以丧失广交会资格及拉入黑名单为由要求 Mr.Fernando Hector Machado 签署和解协议。根据《中华人民共和国民法典》上

7



述和解协议系公司员工被胁迫下签署，非 Point Collection 的真实意思表示，Point Collection 对《第 135TD0029 号和解协议书》的签订内容不予认可。协议中关于 2024 年 5 月 31 日之前向贵司支付货款美元$220,186 将暂停支付，直至贵司与 Point Collection 另行协商明确付款金额和具体时间后支付。

......

4. 被申请人以中国进出口商品交易会知识产权和贸易纠纷投诉接待站为被投诉人向中国进出口商品交易会发出《关于签订<第 135TD0029 号和解协议书>争议解决投诉信》投诉问题及诉求为：第一，被投诉人处理争义时未经合理审查，以胁迫方式要求投诉人员工签署与相对方的和解协议，违背广交会基本的营商准则，有违公平公正。第二，要求撤销《第 135TD0029 和解协议书》。第三，对投诉人是否丧失广交会入场资格作出答复。

5. 2024 年 7 月 26 日，申请人与北京市盈科（深圳）律师事务所签订《民事委托代理合同》，委托该所律师为本案提供法律服务，并按约定支付律师费人民币 80,000 元。

6. 申请人已预交仲裁费人民币 52,117 元。

**（二）关于本案法律适用问题**

本案被申请人是在美国注册成立的公司，因此，案涉合同关系的主体有涉外因素，属于涉外民事关系。《中华人民共和国涉外民事关系法律适用法》第三条规定，"当事人依照法律规定可以明示选择涉外民事关系适用的法律"。案涉《第



135TD0029 号和解协议书》未选择适用的法律，但申请人当庭表示本案准据法首先适用联合国公约，联合国公约没有规定的情况下适用中国大陆法律，被申请人当庭表示"适用中国大陆法律"。依照《中华人民共和国涉外民事关系法律适用法》第四十一条，"当事人可以协议选择合同适用的法律。当事人没有选择的，适用履行义务最能体现该合同特征的一方当事人经常居所地法律或者其他与该合同有最密切联系的法律"。仲裁庭根据最密切联系原则并结合申请人和被申请人的意见，认定中国内地法律为解决本案纠纷的准据法。

**（三）关于本案的争议焦点**

根据本案事实和相关法律法规之规定，并综合分析申请人的仲裁请求和被申请人的答辩意见，仲裁庭对如下焦点问题进行分析判断：

1. 案涉《和解协议》的效力

被申请人主张，Mr. Fernando Hector Machado 在广交会期间仅负责寻找供应商合作，不负责也无权处理货款支付问题，其在受胁迫情况下签署《和解协议》，属于可撤销合同。申请人主张，第一，和解协议是在第三方组织之下经过双方友好协商签署的，并无证据证明存在被胁迫的情形。第二，根据双方以往的交易习惯，被申请人签署代表 Mr. Fernando 完全有权代表被申请人签署该协议。第三，退一步讲即使 Mr. Fernando 有超越代理权的行为，根据以往的交易习惯和双方长期合作的管理，申请人完全有理由相信其有权签署协

9



议。

关于签署《和解协议》协议的授权。仲裁庭认为，Mr. Fernando Hector Machado 向申请人下达案涉五份采购单并实际参与相关货款支付安排；（2024）桦曜律函字第 0531-235 号《律师函》确认 Mr. Fernando Hector Machado 为被申请人采购部员工，其职责主要为与申请人商谈采购服装及付款事宜。可见，Mr. Fernando Hector Machado 系执行被申请人工作任务的人员，申请人基于双方交易惯例，有充分理由相信其有权签署《和解协议》，根据《中华人民共和国民法典》（下简称《民法典》）第一百七十条相关规定，仲裁庭认定，Mr. Fernando Hector Machado 签署《和解协议》对被申请人具有法律约束力，被申请人关于 Mr. Fernando Hector Machado 未经授权签署协议的答辩意见缺乏事实和法律依据，不应采信。

关于《和解协议》是否为被申请人真实意思表示。仲裁庭认为，《和解协议》经广交会知识产权和贸易纠纷投诉接待站调解签署，调解员签名并加盖广交会知识产权和贸易纠纷投诉接待站印章，被申请人未能举证证明受胁迫签署协议，也未按法定程序行使撤销权，因此，被申请人关于受胁迫签署协议的答辩意见缺乏事实和法律依据，不应采信。

综上，仲裁庭认定案涉《和解协议》系申请人和被申请人真实意思表示，不违反法律行政法规强制性规定，应为有效合同，对合同当事人具有法律约束力。

2. PO#333-A2409 号采购单项下货款争议是否属于本案

10



审理范围

被申请人辩称，《和解协议》仅约定案涉五份采购单项下货款支付问题，申请人仲裁请求的货款金额应当扣除PO#333-A2409号采购单项下货款12,690美元。庭后，仲裁庭就是否同意仲裁院审理PO#333-A2409号采购单履行争议向申请人和被申请人发出《问题清单》，双方未达成一致意见，申请人主张仲裁院审理PO#333-A2409号采购单履行争议并未超出仲裁协议范围。

仲裁庭认为，第一，案涉《和解协议》第5条明确约定："本协议作为采购单号PO#295-A23122、PO#302-A23123、PO#308-A23125、PO#324-A2402、PO#325-A2403有关争议的最终解决方案"；第二，《和解协议》的目的在于明确五份案涉采购单项下货款支付时间和争议解决方式。可见，《和解协议》并非独立的合同，而是基于五份案涉采购单而签订的补充协议，但不是PO#333-A2409号采购单的补充协议，因此，PO#333-A2409号采购单履行争议不应适用《和解协议》约定的仲裁条款。事后，申请人和被申请人也未能就PO#333-A2409号采购单争议由仲裁院审理达成合意，据此仲裁庭认定PO#333-A2409号采购单项下货款争议不属于本案审理范围。仲裁庭认定《和解协议》约定被申请人支付货款金额中包含PO#333-A2409号采购单项下货款属于货款金额属核算金额错误，应予扣除。

3. 申请人违反《商业保密协议》可否作为被申请人拒绝支付案涉五份采购单项下货款的抗辩理由



被申请人主张，申请人违反《商业保密协议》约定的保密义务，应承担违约赔偿责任，应从货款中扣除。申请人主张，《商业保密协议》与本案无关，且争议解决方式为诉讼，因此被申请人应另寻法律途径解决。

仲裁庭认为，第一，《商业保密协议》未约定仲裁条款，相关争议不属于本案审理范围；第二，本案系买卖合同纠纷，根据《民法典》第五百九十五条规定："买卖合同是出卖人转移标的物的所有权于买受人，买受人支付价款的合同。"本案中，申请人已经实际履行交货义务，被申请人应当履行支付货款义务，即使申请人违反《商业保密协议》承担违约责任，也不能作为拒绝支付货款的抗辩理由。综上，被申请人拒绝履行支付货款义务的抗辩理由不应支持。

**（四）关于申请人的仲裁请求**

1. 两被申请人共同向申请人支付货款 220,186 美元，并从 2024 年 6 月 1 日起按同期 LPR 的 1.5 倍支付利息至付清之日止

关于应付货款金额，如前所述，PO#333-A2409 号采购单项下货款争议不属于本案审理范围，因此包含 PO#333-A2409 号采购单项下货款 12,690 美元应予扣除，扣除后货款为 207,496 美元。仲裁庭裁决，被申请人向申请人支付货款 207,496 美元。

关于利息，仲裁庭认为《和解协议》明确约定被申请人应当于 2024 年 5 月 31 日支付货款，逾期则构成违约，应当

12



补偿申请人的资金占用损失。因《和解协议》未约定逾期付款违约责任，申请人根据《最高人民法院关于审理买卖合同纠纷案件适用法律问题的解释（2020 修正）》第十八条相关规定，按违约行为发生时（2024 年 6 月 1 日）中国人民银行授权全国银行间同业拆借中心公布的一年期贷款市场报价利率（LPR）标准为基础加计 50%计算逾期付款损失。仲裁庭查明，2024 年 6 月 1 日适用的一年期贷款市场报价利率（LPR）为 3.45%，加计 50%为 5.175%；中国人民银行发布的 2024 年第二季度《中国货币政策执行报告》明确 2024 年 6 月的一年期美元贷款平均利率为 5.25%，申请人请求的违约金计算标准适当，应予支持。仲裁庭裁决被申请人向申请人支付利息，利息从 2024 年 6 月 1 日起，以 207,496 美元为基数，按每年 5.175%的标准计算利息直至付清之日止。

2．两被申请人共同赔偿申请人支付的律师费损失 80,000元

仲裁庭认为，本案系被申请人违约所引起，律师费系申请人实现债权的必要费用，被申请人应承担补偿责任。根据《仲裁规则》第六十四条相关规定并结合本案实际情况，仲裁庭酌情裁决两被申请人共同补偿申请人律师费损失 50,000元。

3．被申请人承担本案仲裁费用

仲裁庭认为，本案系被申请人违约所引起，根据《仲裁规则》第六十四条相关规定并结合本案实际情况，仲裁庭裁决本案仲裁费全部由被申请人承担。



# 三、裁　决

综上，仲裁庭对本案作出裁决如下：

（一）第一被申请人、第二被申请人共同向申请人支付货款 207,496 美元及利息（利息以 207,496 美元为基数，从 2024 年 6 月 1 日起，按每年 5.175%的标准计算至付清之日止）。

（二）第一被申请人、第二被申请人共同补偿申请人律师费损失人民币 50,000 元。

（三）本案仲裁费人民币 52,117 元，全部由第一被申请人、第二被申请人承担。申请人已预交人民币 52,117 元，抵作本案仲裁费不予退还，第一被申请人、第二被申请人直接向申请人支付人民币 52,117 元。

以上确定的各项应付款项，第一被申请人、第二被申请人应在本裁决作出之日起十日内支付完毕。

本裁决为终局裁决，自作出之日起发生法律效力。

14



独任仲裁员：

二〇二五年三月三十一日



仲裁庭秘书：李宗怡

15

